# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | 2:15-cv-1094 **ELECTRONICALLY FILED** |
| Plaintiff, | |
| v. | |
| HOLLAND ACQUISITIONS, INC., d/b/a HOLLAND SERVICES, a Corporation; and BRYAN GAUDIN, Individually, and as a Corporate Officer of HOLLAND ACQUISITIONS, INC., d/b/a HOLLAND SERVICES, | |
| Defendants. | |

## OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court is Plaintiff's Motion to Amend/Correct Schedule A. (ECF No. 105 ("Motion").) For the reasons that follow, the Motion is granted.

### I. Background

On August 20, 2015, the Secretary of Labor ("Plaintiff") initiated this enforcement action against Defendants Holland Acquisitions, Inc., and Bryan Gaudin ("Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"). (Compl., ECF No. 1 ("Initial Complaint").) Put simply, the allegations from the Initial Complaint center around Defendants' alleged improper classification of abstractors, title examiners, and landmen as independent contractors and Defendants' resulting failure to properly compensate such individuals for overtime worked. Plaintiff is seeking back pay, liquidated damages, and a permanent injunction under § 16(c) and § 17 of the FLSA. (*Id.* ¶¶ IX–XI.) The parties began exchanging information about possibly

affected employees before this case was filed. Defendants contend that they provided Plaintiff with a list of 410 individuals who each may have been relevant to Plaintiff's investigation well before Plaintiff filed his Initial Complaint. (ECF No. 114-2.) Plaintiff included in his Initial Complaint a list of 89 named individuals, intended to represent, albeit not exclusively, a list of Defendants' current and former employees to whom the Defendants allegedly owe money on account of the pled FLSA violations. (ECF No. 1, ¶ X ("As a result of the violations alleged in paragraphs VI and VIII above, amounts are owing for Defendants' current and former employees including the persons specifically listed in the attached Schedule A to the Secretary's Complaint.").) That list is referred to as Schedule A. (ECF No. 1-1.)

Schedule A, when filed with the Initial Complaint, was not exhaustive, and it was not conveyed as such. Rather, the Initial Complaint specifically stated that Plaintiff was seeking damages not only for those listed in Schedule A but also for unknown employees. (ECF No. 1, ¶ XI ("Additional back wages and liquidated damages also may be owed to certain present and former employees presently unknown to the Secretary for the period covered by this Complaint.").) The Initial Complaint stated that it covered any individuals involved in the alleged violations from May 2012 to the present. (*Id.*) The notion that more names could be added to Schedule A was also mentioned in an early status conference with the Court held three months after the Initial Complaint was filed. (Tr. of Telephonic Proceedings, Nov. 18, 2015, at 5–6, ECF No. 28.)

Plaintiff amended the Initial Complaint to add additional allegations. (First Am. Compl., ECF No. 21.) Schedule A was not amended. (*Id.*) On July 15, 2016, the Court granted Plaintiff's Motion for Leave to File a Second Amended Complaint following full briefing and oral argument by the parties. (*See* ECF Nos. 44, 46, 51, 54, 55.) The Second Amended Complaint,

filed July 18, 2016, further left the door open for an expanded Schedule A, stating, "Plaintiff's claims seek relief for *all* employees working as Title Abstractors, Title Examiners, and Landmen who were misclassified." (ECF No. 57, ¶ II (emphasis added).) The Second Amended Complaint, as well as the First Amended Complaint, both incorporated Schedule A from the Initial Complaint. (ECF No. 57, ¶ X; *see also* ECF No. 21, ¶ X.) A Supplemental Case Management Order was entered on August 31, 2016, which directed Plaintiff to file an amended Schedule A by November 30, 2016. (ECF No. 68, ¶ 3 ("S-CMO").)

As discovery progressed, more names of possibly relevant "employees"[1] came to light. On October 28, 2016, Plaintiff had reportedly identified 556 additional individuals based on documents provided by Defendants. (ECF No. 106, at 4; ECF No. 114, at 4.) On December 8, 2016, Defendants provided their own list of names totaling 422 individuals. (ECF No. 105-3.) Pending possible resolution by mediation, the case was stayed from January 27, 2017, to June 5, 2017, during which time the parties were not required to engage in further discovery. (ECF Nos. 93, 103.) After the stay was lifted, the parties once again re-visited the ever-evolving list of potentially impacted individuals, which brings us to the motion at hand, filed July 7, 2017, in which Plaintiff seeks to amend Schedule A to include an additional 800 named individuals.

## II. Legal Standard

**Fed. R. Civ. P. 15(a)**

Federal Rule of Civil Procedure 15(a) "allows a party to amend a complaint upon leave of court and states that leave 'shall be freely given when justice so requires.'" *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006). "When justice so requires" is a standard that incorporates a number of equitable factors, such as the moving party's delay in seeking leave to amend,

---

[1] The Court uses the word "employees" solely for ease of reference. Whether these individuals are employees or independent contractors is the issue at the heart of the case.

3

prejudice to opposing parties, bad faith, and futility. *Id.* at 203; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). A court should only deny leave "when these factors suggest that amendment would be 'unjust.'" *Arthur*, 434 F.3d at 203. Most notable, "prejudice to the non-moving party is the touchstone for the denial of an amendment," and "[d]elay alone is not sufficient to justify denial of leave to amend." *Arthur*, 434 F.3d at 204 (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978), and *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).

### III. Discussion

In their opposition to the Motion, Defendants claim amending Schedule A from 89 names to 889 names is a product of Plaintiff's repeated violations of scheduling orders, stems from Plaintiff's undue delay, and results in prejudice to the Defendants. Plaintiff contends that his counsel has been diligently reviewing thousands of discovery documents that have brought to light new information, that Defendants were on notice that many more names would eventually be added, and that Defendants will suffer no prejudice from an amended Schedule A. The Court concludes that Plaintiff will be granted leave to amend Schedule A.

#### A. Motion to Amend Under Rule 16(b)

As a threshold matter, Defendants argue that Plaintiff's Motion must not only comply with Federal Rule of Civil Procedure 15(a) but also Rule 16(b), which controls when a case management order may be modified. "Only after the moving party demonstrates good cause under Rule 16(b)(4) may the Court consider its Motion to Amend under Rule 15's standard." *Greygor v. Wexford Health Sources, Inc.*, No. 2:14-CV-1254, 2016 WL 772740, at *2 (W.D. Pa. Feb. 27, 2016) (citing *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 221–22 (3d Cir. 2014)). Defendants point to the August 31, 2016, S-CMO that directed Plaintiff to file an

4

amended Schedule A by November 30, 2016. ECF No. 68, ¶ 3. Plaintiff did not file the Motion to do so until July 7, 2017.

A party seeking leave to amend pleadings after a deadline set in the Court's case management order must satisfy Rule 16(b)(4). *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Under Rule 16(b)(4), a case management order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The purpose of limiting the period for amending the pleadings is to assure that at some point both the parties and the pleadings will be fixed." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004). Because good cause under Rule 16(b)(4) looks to the diligence of the party seeking the modification of the scheduling order, the party seeking modification bears the burden to demonstrate "good cause" before the Court will amend a case management order. *Id.*; *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. Sept. 15, 2010).

Defendants argue Plaintiff cannot show good cause for what it says is the seven-month delay in filing his Motion. Plaintiff argues the Motion was not untimely and did not in fact violate the S-CMO, so no 16(b) analysis is needed. Under either road paved for the Court, the destination is the same: Plaintiff's Motion does not offend Rule 16(b).

Prior to the November 30, 2016, amendment deadline, the parties participated in a telephonic status conference with the Court. *See* ECF No. 77. Counsel for Plaintiff acknowledged the upcoming November 30 deadline and the possibly of needing more time. The Court stated on the record:

> THE COURT: Okay. So nobody -- you won't get painted in a corner, [Plaintiff's counsel], on your revised Schedule A or anything like that. We'll play it out with this process for now. And I'll of course coordinate.
> . . .

5

> And as we work through this process, if you think that there's going to be a
> friction point with that date and what we're doing, we'll adjust what needs to be
> adjusted so things can be done fairly for everyone. That won't be an issue.

ECF No. 79, 19:11–22. There was no objection from Defendants' counsel as to the obvious implication that the deadline for amending Schedule A could be left open for at least a reasonable time. This makes sense, since the parties were still exchanging information related to the identities and status of possibly affected individuals through January 2017. *See* ECF No. 88, ¶¶ 1, 2. Furthermore, the case was stayed pending mediation from January 27, 2017, to June 5, 2017, during which period it would have been inappropriate for Plaintiff to file a motion to amend Schedule A. *See* ECF Nos. 93, 103. Given the Court's on-the-record statement that the deadline for amending Schedule A would not "be an issue," Plaintiff did not violate the S-CMO. If anything, the Court functionally modified the S-CMO at the time of that telephonic status conference.

Even if the Court did not functionally modify the S-CMO at that status conference, Plaintiff has shown good cause in light of all the events that have transpired since that conference: Plaintiff's reasonable reliance on the Court's on-the-record statement from the status conference; the continued exchange of information between the parties that directly affected Schedule A after November 30, 2016; and the subsequent six-month stay of the case.

Plaintiff demonstrates sufficient good cause that is distinguishable from the Court's decisions in other cases to deny a motion to amend. In *Karlo v. Pittsburgh Glass Works, LLC*, the Court found no good cause shown to modify the case management order when the plaintiff had "engaged in little to no discovery for six months after initiating the suit" and had failed to bring any suggestion of passing deadlines to the Court's attention when the Court initiated an amended case management order. No. 10-1283, 2011 WL 5170445, at *3 (W.D. Pa. Oct. 31,

2011), *aff'd in part and vacated in part on other grounds*, 849 F.3d 61 (3d Cir. 2016). Here, the parties were actively engaged in discovery, especially discovery related to the identities and employment records of Defendants' potentially affected individuals, as evidenced by the conversation between counsel at the November 2016 status conference:

> [Plaintiff's Counsel]: I do have a due date for a revised Schedule A and computations that may be affected by delayed response and identification of relevant workers. I think my revised Schedule A right now is due -- under your order it's November 30. I think [the mediator] maybe wanted to extend that to December 15, but --
>
> THE COURT: Well, let's leave it -- as far as I'm concerned, [the mediator] can make it December 15, and nobody's going to get a hard time from me. So if after we walk through this, that you think -- either side thinks that something is upside-down and needs to be fixed, we'll make sure it gets fixed for you. That won't be a problem. Nobody's going to get jammed up because of that.
>
> [Defendants' Counsel]: And [Plaintiff's Counsel], if you continue to say that you identified other people that you believe, I'm happy to send those on and [get] you responses to that as well.

ECF No. 79, 18:17–19:7. *See also Greygor*, 2016 WL 772740, at *4 (collecting cases of Rule 16(b)(4) modifications that allowed amended pleadings during discovery and even on appeal). Furthermore, Plaintiff brought the pleadings deadline to the Court's attention prior to the deadline's passing, at which point the Court assured the Plaintiff that the deadline was reasonably malleable. Thus, even if the S-CMO set a deadline of November 30, 2016, for amended pleadings, Plaintiff has satisfied its burden to demonstrate good cause and has the Court's consent to effectuate a modification to the deadline to amend pleadings under the S-CMO.

### B. Motion to Amend Under Rule 15(a)

"Only after the moving party demonstrates good cause under Rule 16(b)(4) may the Court consider its Motion to Amend under Rule 15's standard." *Greygor*, 2016 WL 772740, at

*2. Turning to Rule 15, this Court will grant leave to amend if "justice so requires," based on equitable factors and paying particular attention to potential prejudice to the nonmoving party. *See Arthur*, 434 F.3d at 202–03. Defendants argue an amended Schedule A would be "unjust" because it would create undue delay and undue prejudice. *See Arthur*, 434 F.3d at 203.

With regards to undue delay, Defendants allege Plaintiff has essentially been sitting on this expansive list of individual names for more than two years because such names had been identified during Plaintiff's own investigation prior to filing the Initial Complaint. Furthermore, the names were provided eighteen months ago as part of Defendants' discovery responses. The record demonstrates that names and employment records have been floating back and forth throughout discovery, and the Court became involved in several discovery disputes as to such records in August 2016. *See* Tr. of Telephonic Proceedings, Aug. 4, 2016, ECF No. 66, 4:18–5:7; *see also* ECF No. 79, 18:17–19:7. As discussed above, the parties continued to actively sift through individuals' identities in November 2016. Defendants claim the continued sifting was, in reality, redundant sifting; however, it cannot be denied that discovery in this case has been complex and contentious. The Court has repeatedly observed that there was a sound basis to conclude that Plaintiff has been periodically and repeatedly reinventing the wheel and that Defendants have been playing hard-to-get. It has plainly required tedious and time-consuming records review. It appears to the Court that any delay as to this specific Motion was not unjust, and "delay alone is not sufficient to justify denial of leave to amend." *Arthur*, 434 F.3d at 204 (quoting C*ornell & Co.*, 573 F.2d at 823, and *Adams*, 739 F.2d at 868). The case has not yet proceeded to anywhere near trial, and the Court has the authority to extend discovery to allow ample opportunity for Defendants to review an amended Schedule A and engage in such discovery as is necessary. *Cf. Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 48 (5th Cir. 1973).

In *Colonnades*, an FLSA overtime suit, the Court of Appeals for the Fifth Circuit found the district court should have allowed the plaintiff to amend its Schedule A in a wage and hour case *during* the trial. *Id.* at 47–48. The DOL was seeking to nearly double the names on Schedule A and increase the back wage liability more than five-fold. *Id.* The district court had denied the motion to amend Schedule A based on delay and the procedural posture of the case, but the court of appeals emphasized that undue delay is not enough to warrant denial. According to the court of appeals, such a motion should only be denied when "the opposing party is actually prejudiced" to the point where it is put in "some serious disadvantage" beyond hypothetical grievance or loss of a tactical advantage. *Id.* The court of appeals concluded that the defendant in *Colonnades* would not suffer actual prejudice by an amended Schedule A in the middle of trial because the amended schedule derived solely from the defendant's own records, which were in its possession. *Id.*

Defendants seek to distinguish this case from *Colonnades* by correctly pointing out that that case relies on Federal Rules of Civil Procedure 15(b), which applies to motions to amend pleadings during trial; a motion to amend pleadings before trial, as is the case here, is governed by Rule 15(a). Rule 15(b) indeed "envisages a somewhat different scheme of burdens than Rule 15(a)," but 15(b) actually imposes a stricter scheme, "commensurate with the later stage of the proceedings." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 n.3 (D.C. Cir. 1997). "The provision of Rule 15(a) allowing amendment with leave of court gives the District Court discretion and direction. It instructs the District Court to determine the propriety of amendment on a case by case basis, using a generous standard." *Id.* at 344. While the two subparts are "somewhat" different and apply in different procedural phases of a case, the fact that the court in *Colonnades* found insufficient prejudice to deny the plaintiff's motion to amend

Schedule A is persuasive here, where Defendants have much more time to prepare trial strategy and conduct additional discovery, as compared to the situation confronting the defendants in *Colonnades*.

Defendants also argue that an amended Schedule A would result in more than just crunching bigger numbers; it would result in investigating and deposing hundreds more individuals in order to determine the extent to which each individual was or was not directed to work off-the-clock, a factual investigation that cannot be quickly accomplished with a calculator. However, Defendants have the information—which originates from their own records—to conduct such factual investigations, and the Court will provide them with a fair amount of additional time to do so, along with any follow-up discovery. Defendants have been on notice throughout the case that Schedule A could be (and given the tenor of the case, likely would be) expanded, and the sheer volume of lists exchanged throughout discovery, all listing names in the several hundreds, suggested that when an amended Schedule A was presented to the Court, it could be lengthy.

It is also worth noting that Defendants could not make the same objections to an 800-name addition had it been filed on November 30, 2016. If one excludes the six-month stay and looks only at the active life of the case, this Motion came only two months late, in a case that has now been in pre-trial for two years. Defendants fail to demonstrate how those two "active" months create prejudice, other than it eroded two months of time during which Defendants could have been investigating. To that end, the Court's extending discovery is the antidote.

Beyond additional discovery, Defendants argue that the proposed amended Schedule A contains names clearly beyond the scope of the Second Amended Complaint, which will force the Defendants to engage in another round of motion practice to trim down any amended

10

Schedule A. The Court will certainly read and consider any motions filed, but the extent to which some of the newly added names are inappropriate is a question for another day. The purpose of the Motion at hand is to determine if it would be unjust to allow Plaintiff an opportunity now to amend.[2] The Court concludes that it would not. The practical result of this decision boils down to whether up to 800 additional individuals, whose names have been floating among the parties throughout discovery, will have an opportunity to recover back wages if they are owed them under the law. Given the procedural posture of the case, allowing such an amendment now does not unduly prejudice Defendants.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Amend/Correct Schedule A of his Second Amended Complaint is granted. An appropriate Order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: October 18, 2017

---

[2] That said, the Court strongly cautioned Plaintiff's counsel at Oral Argument that if Plaintiff were to include names on an amended Schedule A for whom relief was plainly not available due to the passage of time or otherwise, Plaintiff would be in some pretty hot water with the Court. That warning stands.

11