## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. ALEXANDER ACOSTA,<br>SECRETARY OF LABOR, UNITED<br>STATES DEPARTMENT OF LABOR, | )<br>)<br>)  2:15-cv-1094 |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| HOLLAND ACQUISITIONS, INC., d/b/a<br>HOLLAND SERVICES, a Corporation; and<br>BRYAN GAUDIN, Individually, and as a<br>Corporate Officer of HOLLAND<br>ACQUISITIONS, INC., d/b/a HOLLAND<br>SERVICES, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION

### Mark R. Hornak, United States District Judge

Pending before the Court is the Secretary of Labor's (the "Secretary's") Motion for Leave to File Third Amended Complaint. (ECF No. 141 ("Motion for Leave").) The Secretary seeks to join a new Defendant to the case: former Chief Executive Officer of Holland Acquisitions, Inc. ("Holland"), Robert Gaudin ("RG"). For the reasons that follow, the Motion for Leave is denied.

### I. Background[1]

This lawsuit arises out of alleged violations of the Fair Labor Standards Act (FLSA). Put simply, the claims center around Holland's alleged improper classification of abstractors, title examiners, and landmen as independent contractors and Holland's resulting failure to properly compensate such individuals for overtime worked. Prior to the commencement of this lawsuit, the

---

[1] This section closely resembles the Background Section in the Court's previous Opinion in this case dated October 18, 2017. (ECF No. 131.) That Opinion was also about the Secretary seeking leave to amend his pleadings.

Department of Labor (DOL) conducted its extensive pre-suit investigation, which included a review of Holland's records. (Investigator's Coverage Memo, ECF No. 148-1, at 23–30 ("Memo").) The Memo was written by DOL Investigator Nicholas Barron and summarizes the nearly two-year FLSA investigation into Holland that took place from April 2012 through March 2014. (*Id.*) The Memo identities only one "Section 3(d) employer[2] for purposes of the investigation," and that individual was RG. According to the Memo, RG, as President of Holland, "ha[d] an active role in the management [sic] the daily operations of the firm including hiring, firing, setting the rates of pay, and directing the work of the employees." (Memo, at 1.) This same language, "Section 3(d) employer for purposes of the investigation is Robert L. Gaudin," appears in another nearly identical report signed by Wage & Hour Investigator Steven Bethurem and dated January 1, 2015. (ECF No. 149-2.) At oral argument on February 13, 2018, the Secretary characterized this language as essentially the investigators' recommendation to bring a federal lawsuit against RG.

On August 20, 2015, the Secretary initiated this FLSA enforcement litigation, alleging violations of the FLSA against two Defendants: Holland and Chief Officer *Bryan* Gaudin.[3] (Compl., ECF No. 1 ("Initial Complaint").) RG was not a named Defendant. The Initial Complaint (as have all of the subsequent pleadings by the Secretary) alleges individual liability against Bryan Gaudin pursuant to 29 U.S.C. § 203(d) on the basis that he acted as an employer in relation to

---

[2] The FLSA imposes liability for violations of its overtime provisions on an individual if that individual acts as an employer in relation to certain employees. 29 U.S.C. § 203(d); *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012).

[3] Bryan Gaudin is RG's son and was identified as Holland's Chief Operating Officer. (ECF No. 142-3, 49:4–10.)

specific employees,[4] and he too may be liable for the very same unpaid wages for which Holland may be liable. (Initial Compl., ¶ III.) The Secretary included in his Initial Complaint a list of 89 specific individuals, intended to represent, albeit not exclusively, a list of Holland's current and former employees to whom the Defendants allegedly owe unpaid wages on account of the pled FLSA violations. (Initial Compl., ¶ X ("As a result of the violations alleged in paragraphs VI and VIII above, amounts are owing for Defendants' current and former employees including the persons specifically listed in the attached Schedule A to the Secretary's Complaint.").) That list is referred to as Schedule A. (ECF No. 1-1.)

Once this dispute entered federal court, it began to snowball. After the parties conducted their Rule 26(f) planning meeting, the Secretary amended the Initial Complaint to add additional allegations, filing his First Amended Complaint on November 13, 2015. (First Am. Compl., ECF No. 21.)

Then, nearly five months after filing the First Amended Complaint, the Secretary sought to amend again. The Secretary sought leave to file a Second Amended Complaint to broaden the prayer for relief to include back wages through the date of judgment (instead of through the date the Complaint was filed), to add a claim for relief under § 17 of the FLSA, 29 U.S.C. § 217, to specify which regional offices of Holland were at issue in the suit, and to clarify various terminology used in the First Amended Complaint.[5] (Mot. for Leave to File Second Am. Compl., ECF No. 44.) The Secretary asserted that such amendment "would facilitate the 'just, speedy, and

---

[4] The Court uses the word "employees" solely for ease of reference. Whether these individuals are employees or independent contractors is the issue at the heart of the case.

[5] According to the Secretary, this new claim was "asking the Court to enjoin Defendants from continuing to withhold back wages and prejudgment interest owed to employees, seeks additional necessary relief including an order requiring Defendants' assistance in locating employees for distribution of back wages, and seeks post-judgment interest." (Suggestions in Supp. of Mot. for Leave to File Second Am. Compl., ECF No. 44-1.)

inexpensive' resolution of this case by narrowing the issues before the court and clarifying ambiguities in the pleadings about which employees are included in the lawsuit." (Suggestions in Supp. of Mot. for Leave to File Second Am. Compl., ECF No. 44-1, at 3.) The Defendants opposed this motion. (ECF No. 46.) After a full briefing and oral argument by the parties, the Court granted the Secretary's motion for leave to amend on July 15, 2016. (*See* ECF Nos. 44, 46, 51, 54, 55.)

As discovery progressed, more names of possibly relevant "employees" came to light. Pending possible resolution by mediation before a United States Magistrate Judge, the case was stayed from January 27, 2017, to June 5, 2017,[6] during which time the parties were not required to engage in further discovery. (ECF Nos. 93, 103.) After the stay was lifted, the parties once again re-visited an evolving list of potentially impacted individuals. On July 7, 2017, the Secretary filed another motion for leave to amend, in which he sought to amend Schedule A to include an additional 800 named individuals to the original Schedule A, which contained 89 named individuals. (Pl.'s Mot. to Amend the Schedule A, ECF No. 105.) Defendants once again objected to the Secretary expanding the case (this time by expanding the names on Schedule A nearly ten-fold). (ECF No. 114.) Following another round of briefs and oral argument, the Court granted the Motion to Amend/Correct Schedule A on October 18, 2017.[7] (Order, ECF No. 132.) But, as the Court noted in the Opinion accompanying that Order, the Court had "repeatedly observed that there was a sound basis to conclude that the Secretary has been periodically and repeatedly

---

[6] Some discovery obligations were stayed beginning August 31, 2016, to allow the parties to exchange information that would be necessary for a fruitful alternative dispute resolution and also not unnecessarily expend litigation resources. (*See* Supp. Case Management Order, ECF No. 68, ¶ 1.) However, the Secretary acknowledged that during this time and even through the actual stay, the Secretary "continued interviewing employees to gather evidence." (ECF No. 142, at 2–3.)

[7] At oral argument on August 15, 2017, the Court made clear that Plaintiff's Motion to Amend/Correct Schedule A "is really a motion for leave to file a Third Amended Complaint because Schedule A is Schedule A to a Complaint." (*See* Tr. of Proceedings on Aug. 15, 2017, ECF No. 139, 5:4–6.)

reinventing the wheel." (Op., ECF No. 131, at 8.) Despite this observation, the Court pointed to record evidence from which it was apparent to the Court and should have been to the named Defendants that Schedule A was likely destined to grow (even substantially), and any delay in bringing the Motion to Amend/Correct Schedule A was not sufficiently undue or prejudicial to warrant denial of further amendment under Federal Rule of Civil Procedure 15. (*Id.* at 11.) [8]

By then this case had spilled over onto a whole new lawsuit. The Secretary filed a new civil action in this Court on March 22, 2017, this time only against RG, former Chief Executive Officer of Holland. (Compl., *Acosta v. Gaudin*, No. 2:17-cv-366 (W.D. Pa), at ECF No. 1.) RG, represented by his own distinct counsel, filed a motion to dismiss the Secretary's complaint in that case under the doctrine of claim-splitting and that complaint's failure to meet the applicable *Twombly* and *Iqbal* pleadings standards.[9] (Mot. to Dismiss, *id.* at ECF No. 7.) The Court concluded that the claim-splitting doctrine precluded the Secretary from maintaining both that action and this action simultaneously, and the Court also concluded that the complaint failed to reach the requisite level of particularity to state a plausible claim for relief. (Op., *id.* at ECF No. 17.) The Court noted that "it is [RG's] relationship with Holland, the lead party in the first case, that makes him a target of the Secretary's litigation arrows in the second case. The Secretary's piecemeal litigation strategy appears to put the Court in the exact predicament that the claim-splitting doctrine aims to avoid." (Op., *id.* at ECF No. 17, at 6–7.) The Court opined that the Secretary likely chose to bring its claims

---

[8] The Secretary did file that Amended Schedule A, but chose to file it outside of compliance with the Court's October 18, 2017, Order, prompting Defendants to file a Motion to Strike, which the Court granted. (ECF No. 144.) The "Amended Schedule A" was stricken, and the Secretary has yet to re-file it as part of a Third Amended Complaint in compliance with the Court's October 18, 2017, Order. It has been six months since the Secretary was granted leave to file (what would be) the Third Amended Complaint (with the Amended Schedule A), yet no such pleading has been filed to date. Perhaps the Secretary was waiting for disposition of this Motion for Leave, in hopes that he can combine authorized amendments to Schedule A with yet more amendments to the pleading itself.

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

5

against RG in a separate action to avoid another fight about amendment in this case and the expansion of *this* lawsuit, but "[t]he law requires the Secretary to roll those dice at the table where he is already seated." (Op., *id.* at ECF No. 17, at 7–8.)

On November 8, 2017, the Secretary did just that and filed his Motion for Leave at issue here. (ECF No. 141.) The Court granted RG's motion to intervene for the limited purpose of responding to the Secretary's Motion, and the parties engaged in another round of written briefs and oral argument. (ECF Nos. 142, 148-1, 149, 154, 156.)

## II. Legal Standard

### A. Fed. R. Civ. P. 16(b)(4)

A party seeking leave to amend pleadings after a deadline set in the Court's case management order must satisfy Rule 16(b)(4). *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Under Rule 16(b)(4), a case management order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Only after the moving party demonstrates good cause under Rule 16(b)(4) may the Court consider its Motion to Amend under Rule 15's standard." *Greygor v. Wexford Health Sources, Inc.*, No. 14-cv-1254, 2016 WL 772740, at *2 (W.D. Pa. Feb. 27, 2016) (citing *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 221–22 (3d Cir. 2014)). "Thus, in such instances, the lenient Fed. R. Civ. P. 15(a)(2) standard . . . yields to the good cause requirement." *Lee v. Park*, No. 17-1421, ---F. App'x ---, 2017 WL 6508840, at *4 (3d Cir. Dec. 20, 2017). "The purpose of limiting the period for amending the pleadings is to assure that at some point both the parties and the pleadings will be fixed." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004). Because good cause under Rule 16(b)(4) looks to the diligence of the party seeking the modification of the scheduling order, the party seeking modification bears the burden to demonstrate "good cause" before the

6

Court will amend a case management order. *Id.*; *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. Sept. 15, 2010). Denials of motions for leave to amend pleadings under Rule 16(b)(4) are reviewed for abuse of discretion. *Lee v. Park*, 2017 WL 6508840, at *2.

### B. Fed. R. Civ. P. 15(a)

Leave to amend shall be "freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), in order to promote the general policy of the Federal Rules of Civil Procedure that cases are better resolved on their merits. *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). The standard for granting leave to amend was recently outlined by our Court of Appeals in *Mullin*:

> In determining whether leave to amend might reasonably be denied, courts are guided by the *Foman* factors, named for the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962). Denial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility. The *Foman* factors are not exhaustive, allowing a court to ground its decision, within reason, on consideration of additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff. All factors are not created equal, however, as "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

*Mullin*, 875 F.3d at 149–50. A court should only deny leave "when these factors suggest that amendment would be 'unjust.'" *Arthur*, 434 F.3d at 203.

### III.  Discussion

"[W]hen a party seeks leave to amend the pleadings after the deadline set by a court's scheduling order, that party must first satisfy Rule 16(b)(4)'s requirements for modifying a scheduling order." *Abed-Rabuh v. Hoobrajh*, No. 17-cv-15, 2018 WL 300453, at *2 (W.D. Pa. Jan. 4, 2018) (quoting *Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, No. 15-cv-22, 2017

WL 4286343, at *2 (W.D. Pa. Sept. 26, 2017)). [10] Thus, the Court will first analyze the Secretary's

Motion under Rule 16(b)(4) to determine whether the Secretary has demonstrated good cause to

modify the operative scheduling order, and then, to the extent necessary, the Court will analyze

the Secretary's Motion under Rule 15(a)(2) to determine whether amendment to add RG to this

case would be unjust.

### A. Fed. R. Civ. P. 16(b)(4)

The operative scheduling order is the Second Amended Case Management Order dated

June 5, 2017. (ECF No. 103 ("SACMO").) The SACMO states that "[a]dditional parties were

required to be joined on or before February 4, 2016. All Motions to Amend a pleading, add parties

and the like will be considered on their own merits." (*Id.* ¶ 3(b).)[11] After reviewing this Motion for

Leave on its own merits under the Rule 16(b)(4) analysis, the Court concludes that the Secretary

---

[10] There had been some debate between the parties in prior motions to amend as to whether the Third Circuit applies the Rule 16(b)(4) standard or whether the Rule 15 standard alone should govern motions for leave to amend pleadings. (*See* ECF No. 51, at 5.) The Court of Appeals acknowledged that *Race Tires* was the first time the court had addressed the "tension" between Rule 15(a)(2) and Rule 16(b)(4), but the Court of Appeals did not fully settle the "tension" when it held there was no abuse of discretion in denial of leave to amend since the lower court concluded amendment was improper under either standard. 614 F.3d at 84. In a recent non-precedential opinion, our Court of Appeals took a clearer position that "[w]here a scheduling order governs amendment of the pleadings," it is proper to apply the Rule 16(b)(4) standard. *Lee v. Park*, 2017 WL 6508840, at *4. The Court adopts such an approach here.

[11] After dismissing the separate lawsuit against RG, the Court ordered any motions *for leave* to add RG to this case would only be considered if such motion was filed on or before November 8, 2017. *Acosta v. Gaudin*, No. 17-cv-366, at ECF No. 18. The Secretary did indeed meet that deadline. That does not diminish the fact that the deadline to add parties to this case had a set deadline of February 4, 2016. Therefore, analysis under Rule 16(b)(4) is necessary and proper here. Furthermore, the Court's prior statement in the SACMO that motions would be considered on their own merits does not negate the deadline. It merely states the obvious—that the Court will address motions for leave to amend if and when they arise based on the circumstances of the case at that time. It certainly did not override any Rule 16 (or Rule 15) standard for review of untimely requests to add a party. Finally, the Secretary's argument that the lack of a finalized discovery schedule eliminates a Rule 16(b)(4) analysis (for amended pleadings) is unsupported by legal authority. The Court's decision to not set a date-specific discovery deadline at that time merely confirms its suspicions that setting such a deadline at an earlier juncture would be pointless as a practical matter in light of the Secretary's continued gear-shifting in this case, the unusual nature of motions regarding the exponential growth of Schedule A, and the issues before the Court as to access by the Defendants to unredacted witness statements. Those issues have now been resolved.

8

has not carried his burden to show good cause for modification of the deadline to add this party to this case. The Secretary had actual knowledge from his own Departmental investigators well before this case ever arrived in federal court that RG was not just *one* possible Section 3(d) employer but "*[t]he* Section 3(d) employer." (Memo, at 1 (emphasis added).) The Secretary has failed to show due diligence with respect to adding RG as a named Defendant given his staggering delay in heeding the advice of his own investigators.

This case bears some resemblance to *Race Tires*, in which the district court denied the plaintiffs' motion to amend its complaint for the fourth time. 614 F.3d at 84. In that case, the deadline to amend pleadings in the Court's scheduling order was set for May 30, 2008, but the motion to amend the complaint was filed about six months later on November 19, 2008. *Id.* at 72, 84. The district court also noted that the motion to amend arrived fifteen (15) months after the lawsuit was initiated. 660 F. Supp. 2d 590, 594–95 (W.D. Pa. 2009). The district court denied the motion to amend under a Rule 16(b)(4) analysis due to the delay and the fact that the proposed new claim was "based on an additional legal theory, which would require additional written discovery and depositions." *Id.* at 595. The plaintiffs appealed on the grounds that they could not have discovered the key facts that supported the new claim until they had time to review late-produced documents, which were not provided until after the deadline has passed. 614 F.3d at 84. The Court of Appeals rejected that argument, pointing to several of the district court's conclusions that the plaintiffs were on notice of several key facts supporting their proposed claim. *Id.* at 85.

Like *Race Tires*, the Secretary is also seeking leave to amend a fourth time.[12] But the facts in this case are actually worse (in terms of the propriety of amendment) than those in *Race Tires*.

---

[12] Despite the title of the Secretary's Motion for Leave referencing a "Third Amended Complaint," the amendment of Schedule A was really a request to file a Third Amended Complaint. *See supra* notes 3 & 5. If one were to count the side-step that the Secretary took onto an additional docket to bring RG into the

First, all prior amendments sought in *Race Tires* were timely under the scheduling order *except the last one*. 660 F. Supp. 2d at 594 (plaintiffs moved for leave to file their [prior] amended complaint on the day of the actual deadline for seeking leave to amend the pleadings). That is not the case here. The Motion for Leave to File the Second Amended Complaint missed the amendment deadline by four months. (Mot. for Leave to File Second Am. Compl., ECF No. 44 (filed Apr. 29, 2016); Am. Case Management Order, ECF No. 40 (setting Dec. 15, 2015, amendment deadline).) This is to say nothing of the Secretary's filing of an entire other (improper) lawsuit. [13]

Second, the Secretary brought this Motion for Leave more than twenty-one (21) months after the deadline to add parties[14] (compared to six (6) months in *Race Tires*) and more than twenty-six (26) months into the lawsuit (compared to fifteen (15) months in *Race Tires*). While the Court may have grown "judicially tired"[15] of the Secretary attempting to expand his case before, it is

---

fold, this Motion for Leave would be the Secretary's fifth request to alter the fundamental makeup of his case.

[13] Had the Secretary brought his Motion for Leave here on the same date he filed the separate lawsuit, March 22, 2017, that motion would have been thirteen (13) months after the deadline in the SACMO for adding parties and eighteen (18) months after the lawsuit began. But those are not the numbers that matter. The dates tied to this Motion for Leave are based on its filing date in *this* case. It does strike the Court as odd that the Secretary chose to gamble with two separate motions (and split them into two different cases) when the purpose of both was to further define the contours of the Secretary's enforcement action against Holland and the individuals within the organization that he believes are subject to individual liability.

[14] The deadline in the SACMO was February 4, 2016, but this Motion for Leave was filed on November 8, 2017.

[15] *See* Tr. of Proceedings on Nov. 18, 2016, ECF No. 79, at 12:17. The Court has expressed its concerns to counsel that the Secretary has appeared at multiple junctures to be figuring out his own case sort of "on the fly," and this effort to now add as a Defendant a person the Secretary had had in his remedial sights years ago exemplifies the basis for that concern.

10

now judicially justified in "want[ing] this complicated case to move forward to its ultimate resolution." *Race Tires*, 614 F.3d at 85.

However, good cause can still be established despite the passage of time if the moving party can show due diligence. In order to demonstrate good cause under Rule 16, the Secretary has the burden to show that he acted diligently in presenting his claims against RG to the Court.[16] *Lee v. Park*, 2017 WL 6508840, at \*4 (district court did not err in denying motion to amend because it was "self-evident" that plaintiff was not diligent in seeking amendment because he simply wanted to add a new cause of action based on the same facts found within the initial complaint filed sixteen months prior); *Graham*, 271 F.R.D. at 119 (plaintiff failed to demonstrate good cause to add parties and claims when plaintiff failed to demonstrate diligence in pursuing those claims in the eight months between the deadline to join parties and the motion for leave to amend).

As stated above, the Secretary knew full-well that RG was the top guy at Holland and that he was *the* target individual employer based on the Secretary's own extensive multi-year, pre-suit investigation. The Secretary now counters that the investigator's statements about RG would be insufficient to state a plausible claim under this Circuit's pleading standard, and says, in fact, that when the Secretary pled (only) such allegations in *Acosta v. Gaudin*, this Court made that precise ruling. But that does not excuse the fact that the Secretary was on notice way back in 2014 (from his own DOL investigators) that RG was likely *the* man behind the alleged violations curtain. While the Secretary argues the bulk of what they now know about RG's role at Holland came from depositions taken in September 2017, the Secretary's choice to not dig deeper into RG's role (using his vast statutory investigatory and then the discovery powers in the civil rules) until Fall 2017

---

[16] And this is why the Court did authorize the Secretary's amendment to enlarge Schedule A in a very big way. Among other things, the Court concluded that there was fair warning to the Court and the Defendants that such leave would be sought, and that the allegedly involved employees had been a topic of on-going discovery.

was just that: his choice. *See Walker*, 558 F. App'x at 222 (affirming denial of leave to amend the case management order where plaintiff was aware of individual's role from the time she filed her complaint and the record showed no excuse for the lack of diligence in securing the individual's deposition). On top of that, an examination of the Initial Complaint shows that the Secretary had no issue at all in naming Bryan Gaudin on "Day One" as a Defendant with no more robust of a pleading as to him. Thus, the Secretary's argument in this regard simply does not hold water.

The Secretary admitted at oral argument that his choice to finally turn to RG in 2017 was made only after the Secretary learned that Holland and Bryan Gaudin may not have the monetary resources to pay a judgment award,[17] and that ability to pay was not a part of the 2012–2014 DOL investigation. This is not sufficient to justify the delay in adding RG as a Defendant. The Secretary had means to gain access to Holland's financial information well before March 2017, and, as a plaintiff seeking a monetary award, here perhaps a large one if the Secretary prevails, it should reasonably be expected that ability to pay would be at the forefront of the Secretary's and the DOL Office of the Solicitor's minds as they sought a remedy for alleged FLSA violations, especially when his own investigators pointed the enforcement finger at RG from the very beginning.[18]

The Secretary has failed to show good cause under Rule 16(b)(4) for this Court to amend its SACMO to permit the untimely amendment to add this party to this lawsuit now. Accordingly, the Secretary's Motion for Leave is denied under Rule 16(b)(4).

---

[17] In January 2017, Holland notified the DOL that it lacked the assets to pay back wages, and the DOL assumes that is because Holland had to purchase stock owned by RG when RG left the company. (Pl.'s Reply Br., ECF No. 154, at 1.)

[18] In fact, one of the main arguments made by the Secretary in support of its Motion to Amend/Correct Schedule A back in July 2017 was that everyone knew this was going to be a big case with many, many aggrieved individuals. (*See* Pl.'s Br. in Supp. of Mot. to Amend/Correct, ECF No. 106.)

12

## B. Fed. R. Civ. P. 15(a)(2)

Having concluded that the request to add RG to this lawsuit should not be permitted under Rule 16, the Court's analysis could end here; however, because the Court would also deny the Motion for Leave under Rule 15, the Court will further set out its analysis of the Secretary's Motion for Leave under that standard.

The Secretary asks the Court to focus on the lack of prejudice to the current and prospective Defendants. RG and the Defendants argue that the Motion for Leave should be denied based on its undue delay and futility. Therefore, the Court will address each argument in turn.

### i. Prejudice

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Mullin*, 875 F.3d at 150 n.18 (quoting *Arthur*, 434 F.3d at 204). The Secretary asserts there will be no prejudice to Holland or Bryan Gaudin if RG is added to the case since the claims against the current Defendants will be unchanged and, as a result, it will not subject them to additional discovery costs. The Secretary also asserts that RG, whom the Secretary says has long known about this lawsuit, will not suffer prejudice because his liability is a discrete question that can be adequately addressed in the time remaining for discovery, especially since no trial date has yet been set by the Court. The Court disagrees.

It is true that the legal issues in this case surrounding Bryan Gaudin's individual liability likely would (in legal construct) run parallel to the legal issues surrounding RG's potential liability under Section 3(d), but the Secretary's claim that prejudice is significantly reduced because RG has "been aware of the litigation and the discovery process" does not mean RG can just jump into the case without interruption. The question is not only what extra time or extra work lies ahead (although it certainly would add substantial time and expense to both the current Defendants and

13

RG for RG to catch up), but what pretrial work and discovery would have to be re-done (or at a minimum re-visited). The answer to that latter question is "just about everything."

RG's "awareness" that his former company and his son are in this litigation does not equate to consent or even informed understanding of what has or has not been done in this case, nor does it equate to his acquiescence in the litigation approach and merits arguments made by those Defendants. If RG were to come into the fold as a named Defendant, he (and his independently retained counsel) would have every right to seek to re-open every deposition, every interrogatory, every admission, every request for production, and every aspect of discovery, as no counsel in this case was protecting *RG's* personal interests all along. After all, RG would not be brought in on isolated or "discrete" claims; the Secretary seeks to add him as a joint and several defendant as to the entire case,[19] which means *every* move already made (and to be made) or not made by the other Defendants and by the Secretary could affect RG's personal liability. Any supplementation (really, do-overs) to already-completed discovery or prior motions or pleadings would be the direct result of adding RG as an individual (and potentially individually liable) Defendant this late in the game.

This begs the question: what has happened so far? Here is what the Court knows for sure:

- Discovery began early in this case. Disclosures pursuant to Rule 26(a) were made on or before December 2, 2015. (ECF No. 103 ¶ 3(a).)

- At the January 28, 2016, telephone status conference, the Secretary informed the Court that he was in the process of preparing discovery responses. Defendants served their discovery objections on the Secretary in late February 2016. (*See* Tr. of Proceedings on July 17, 2016, ECF No. 56, 17:8–11.)

---

[19] "The filing was motivated by the Secretary's concern that the statute of limitations was eroding his claim against Robert Gaudin, **who is jointly and severally liable for Holland's FLSA violations**." (Pl.'s Br. in Supp., ECF No. 142, at 3 (emphasis added).)

14

- The parties reported to the Court during its March 15, 2016, telephone conference that they were exchanging documents and discussing objections the week prior to the call.

- In May 2016, Defendants file their Response in Opposition to the Secretary's Motion for Leave to File Second Amended Complaint, which intended to expand the case. (ECF No. 46.) RG did not intervene (nor could he), and the Court granted the Secretary's Motion. (ECF No. 55.)

- In July 2016, the parties informed the Court of arising discovery disputes related to Defendant's production of discovery. (*See* Tr. of Proceedings on July 17, 2016, ECF No. 56.)

- By August 2016, the parties had reached an impasse on two discrete discovery disputes, and the Court conducted a telephone status conference to discuss whether the current Defendants must turn over certain production related to individuals at Holland who were not specifically listed on the Schedule A and whether the Secretary can invoke his privilege to redact and withhold certain information. (*See* Tr. of Proceedings on Aug. 4, 2016, ECF No. 66.)

- On August 31, 2016, the Court issued a Supplemental Case Management Order that directed the exchange of information between the parties, which included a wide array of information from both sides, in anticipation of mediation. (ECF No. 68.) In fact, this August 2016 Order states that "[i]n the event that the parties are unable to resolve this matter during the mediation, the Court will allow ninety (90) days from the date of the mediation for the parties to *complete* fact discovery." (*Id.* ¶ 5 (emphasis added).)

- In November 2016, the Court was required to again intervene in a discovery dispute. (*See* Tr. of Proceedings on Nov. 18, 2016, ECF No. 79.)

- On May 5, 2017, the parties participated in a settlement conference with Chief Magistrate Judge Kelly. (ECF No. 99.) RG was not ("nor was he ever") required to attend because "Robert Gaudin is not a party to the instant action." (ECF No. 98.) Thus, RG was not in attendance. The case did not settle. (ECF No. 99.)

- In June 2017, Defendants file their Response in Opposition to the Secretary's Motion to Amend/Correct Schedule A, which also intended to expand the case. (ECF No. 102.) RG did not intervene, and the Court granted the Secretary's Motion. (ECF No. 132.)

- After unsuccessful settlement conferences, the SACMO, filed June 5, 2017, set the *deadline* of fact discovery for September 29, 2017. (ECF No. 103, ¶ 3(d).)

- Defendants filed a Motion to Compel Production of Discovery on July 21, 2017. (ECF No. 112.) The Motion to Compel was fully briefed (ECF Nos. 113, 118, 119), and the Court heard oral argument on August 15, 2017. The Court denied the Defendants' Motion to Compel. (ECF No. 133.)

- In a Reply Brief in Support of his Motion to Amend/Correct Schedule A, the Secretary asserted that the discovery responses (that pertained to alleged employees) produced by the Defendants was "more than 8,000 pages." (ECF No. 117, at 2.) The Secretary described combing through this part of discovery as "a Herculean task." (*Id.* at 2.)

- Defendants filed an Emergency Motion to Compel on September 25, 2017. (ECF No. 124.) The Court granted in part and denied in part that motion. (ECF No. 130.)

- On September 27, 2017, this Court extended discovery to allow for four (4) additional depositions. (ECF No. 130.) However, other depositions had already been conducted prior to this time, including the depositions of Defendant Bryan Gaudin and the

16

30(b)(6) representative for Holland. (*See* ECF No. 142 (attaching transcripts from depositions taken in case).)

In essence, this case is closing in on the fact discovery finish line. If RG were added to the case and he were to seek to re-open a prior dispute to assert a new argument or re-do discovery matters (or even much bigger matters, such as the permissible scope of Schedule A), the Court would be hard-pressed to deny him that opportunity. Furthermore, this case might well likely go back to mediation because there would then be a new participant (who may have more financial room to negotiate), which completely undermines the time and energy spent on the last mediation (which caused a six-month stay in this case as the parties geared up for that process).

The Secretary aptly described discovery in this case as Herculean, but if RG is brought into this case, this lawsuit might best be described as Sisyphean. Adding RG to the case now would create clear prejudice to the existing Defendants, RG himself, and to the expenditure (past and future) of judicial resources in this case. After all, any liability of RG would have as its dual predicates both his personal role in Holland and the entire basis upon which the Secretary seeks to impose liability relative to Holland's actions. As a party Defendant, RG would have every right to do what he thought necessary from a litigation standpoint to defeat either or both bases of that liability, which would logically mean him taking such litigation steps as necessary to attack any basis of such liability, e.g. the very issues which have been at the core of all of the pretrial work to date plus any issues specific to his personal role.

### ii. Undue delay and dilatory motive

For the reasons discussed in the Court's Rule 16(b)(4) analysis with respect to the delay in seeking this amendment and the lack of due diligence, the arguments asserted by the Secretary for failing to timely amend his pleadings do not support amendment under Rule 15. The claim against

RG arises out of facts well known to the Secretary way before litigation began: to put the sharpest point on it, DOL's own investigators actually recommended that RG be *the* Defendant in this case. The Secretary's delay in seeking to join RG (or doing the investigatory/discovery work they thought helpful to name him) until now is undue by any reasonable measure, and it is attributable to the affirmative decisions of the Secretary. *Graham*, 271 F.R.D. at 122–23 (concluding motion to amend suffered from undue delay because proposed claims and new parties arose out of facts known to plaintiffs early in litigation and such amendment would require relitigation of discovery issues).

### iii. Futility

RG challenges the legal sufficiency of the proposed amended pleading with respect to the claims against RG. The Court concluded the pleading against RG in *Acosta v. Gaudin* was legally insufficient because it was mostly comprised of legal conclusions rather than factual allegations, but the Secretary's proposed amendment attached to his Motion for Leave contains more content. Despite the added language, the parties still dispute whether the proposed claims against RG would be legally sufficient. Given the Court's conclusion that the Secretary has not demonstrated "good cause" to amend the SACMO under Rule 16, and that RG has met his burden to show both that adding him to this case would cause unjust prejudice and is the result of undue delay and dilatory motive, the Court need not reach a conclusion on futility. *Graham*, 271 F.R.D. at 124 (declining to reach the issue of futility after concluding failure to show good cause under Rule 16 and concluding the prejudice and undue delay factors warranted denying leave to amend under Rule 15).

### C. Ends of Justice

The Secretary's final argument for why RG should be added to this case at this late date is that RG has the money to pay a possible judgment and Holland and/or Bryan Gaudin may not. The Secretary therefore insists that the Court disregard the concerns of prejudice, unwarranted delay, and, perhaps, his own ill-advised litigation strategy because "any court's primary goal must be justice for the parties" and "Holland's title employees should not be punished for [the Secretary's] decision." (Pl.'s Reply Br., ECF No. 154, at 2.) It is true that the Secretary's handling of this case as to RG may impact the very people whose interests he seeks to vindicate, and it is axiomatic that "it is not a judge's job to assist one advocate at another's expense." *United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011). But beyond that more general principle, and although the "prejudice denying leave to amend would cause to the plaintiff" is one consideration that a court should take into account, any such prejudice here would be completely of the Secretary's own making. *Mullin*, 875 F.3d at 150. There is no "surprise" party at issue here—the DOL well knew about RG and his alleged role at Holland all along. The Secretary knew those things because his own investigators told him so. And this is not an unsophisticated litigant—from the Court's perspective, it certainly appears that the Secretary has skilled investigators and highly experienced counsel, both with vast investigatory and litigation tools at their disposal. And, as noted above, any "ends of justice" analysis must also consider the hard reality that allowing the Secretary to now avoid his seemingly knowing decision to not sue RG would lead inexorably to a restart of the case should RG seek to contest liability (either generally or specifically as to him), materially affecting the current Defendants, who also are entitled to justice.

Even if RG were to be added to the case now, there would likely be a request from the existing Defendants to shift the costs of litigation that result from the addition of RG as a

Defendant. This would likely involve shifting of the cost of "do over" litigation from the current Defendants to the Secretary for all current Defendants' attorney's fees and costs associated with any repeated motion practice, discovery, or other litigation activity that would not need to occur but for the new arrival of RG as a Defendant. From where the Court sits, that cost shift request would likely be substantial and, because the Secretary's litigation is ultimately funded by the taxpayer, such substantial added costs would be borne by the taxpayer.

Furthermore, this is not a case where denial of amendment necessarily deprives the Secretary of the ability to resolve this case on its merits. *Mullin*, 875 F.3d at 149 (Rule 15 is intended to effectuate the general policy of the Federal Rules for Civil Procedure favoring resolution of a case on its merits). The Secretary's concerns about the feasibility of a collection of a possible judgment are concerns that every plaintiff's counsel would be aware of, and to the extent there was any transfer of assets between Holland and RG, equitable doctrines (including as to tracing, or as to fraudulent transfers) may provide a source of recovery at the damages phase. But in any event, the extent to which the Secretary elected to not focus on the remedial end game is a result of his own choices. Given the prejudice and undue delay that such an amendment would cause to RG, to the current Defendants, and to the fair and sound administration of this case, it would be unjust to allow the Secretary to amend to only now add RG as a named Defendant.

## IV.    Conclusion

For the foregoing reasons, the Motion for Leave to File Third Amended Complaint is denied.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: May 16, 2018.

cc: All counsel of record