## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIE A. SU,                                     )
                                                 )
                Plaintiff,          )     2:15-cv-01094
                                                 )
                v.                  )
                                                 )
BRYAN GAUDIN,                                    )
                                                 )
                Defendant.

## <u>OPINION</u>

**Mark R. Hornak, Chief United States District Judge**

Both parties to this case have filed Motions for Summary Judgment, claiming that there exist no issues of material fact such that summary judgment should be granted in favor of either Plaintiff or Defendant, as the case may be.

Plaintiff, the United States Department of Labor via Acting Secretary Julie Su, argues that there is no factual dispute as to whether Defendant Bryan Gaudin, former CEO of Holland Acquisitions, Inc. ("Holland" or "Company") improperly categorized those individuals performing land title and acquisition services for Holland as contractors rather than as employees; whether or not Gaudin was an employer under the Federal Labor Standards Act ("FLSA"); whether Gaudin violated the FLSA's recordkeeping provisions; the number of Landmen that fall under the scope of the litigation; and whether Gaudin acted willfully in violating the FLSA. (ECF No. 283).

On the other hand, Gaudin argues that, based on the record advanced, the Court must necessarily conclude that he was not an employer for FLSA purposes, that the involved individuals were properly classified as contractors, and that he did not act willfully in allegedly violating federal law. (ECF No. 289).

For the reasons that follow, both Plaintiff's and Defendant's Motions for Summary

Judgment are generally DENIED, save for the issue of the number of Landmen that fall within the scope of this litigation, which the Court concludes is uncontested by the Defendant. As to that discrete issue, the Plaintiff's Motion is GRANTED. With respect to the remaining issues, there are more than a few genuine issues of material fact such that summary judgment is inappropriate in either direction.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Secretary of Labor, initially under R. Alexander Acosta and now Acting Secretary Julie Su (with several intervening Secretaries and Acting Secretaries), filed this action against Holland Acquisitions, Inc. ("Company") in this Court on August 20, 2015. (ECF No. 1). The Complaint alleged that Holland and Defendant Gaudin, as the Company's former COO and later CEO, had violated §§ 16 and 17 of the FLSA by improperly classifying certain workers as independent contractors, resulting in the failure to properly compensate these individuals for overtime worked. (*Id.*, p. 3-5). The initial Complaint was subsequently amended (again, then again, and then again) to expand the list of current and former employees to whom Holland allegedly owed unpaid wages and liquidated damages. (ECF Nos. 21, 57, 166).

The Third Amended, and operative, Complaint (the "Complaint") alleges that Holland misclassified three groups of employees—Title Abstractors, Title Examiners, and Landmen—as independent contractors instead of employees (for ease of reference, all such individuals are referred to as "Landmen"). (ECF No. 166, p. 2). These individuals carried out a number of tasks for the benefit of the Company, including researching land deeds to determine ownership of mineral rights, writing and reviewing reports, and other tasks. (ECF No. 166, p. 4). During certain weeks, certain Landmen worked over 40 hours on these tasks. (ECF No. 166, p. 4). By classifying these individuals as independent contractors, the Plaintiff alleges that the Company avoided having

to pay a premium for overtime hours worked. (ECF No. 166, p. 2).

According to the Complaint, Gaudin's role in the misclassification was in his personal, active control and management of the entire company, regulation of the employment of Landmen and contributions to the policy of misclassifying workers such that the misclassification occurred, was willful, and he carries personal liability as an FLSA "employer" for back wages and liquidated damages. (ECF No. 166, p. 2).

Subsequently, Holland filed for Chapter 7 Bankruptcy and entered into a consent judgment with the Department of Labor for over $43 million, along with a variety of forms of injunctive relief. (ECF No. 268). According to the Plaintiff, she is pursuing recovery on that consent judgment in the Bankruptcy Court. (*Id.*). This Court approved the consent judgment on October 1, 2021, terminating Holland as a defendant in this action. (ECF No. 273). The case against Gaudin personally, however, remains live.

The Plaintiff moved for summary judgment against Gaudin. (ECF No. 283). Gaudin then filed his own Motion for Summary Judgment. (ECF No. 289). Both parties responded to the respective opposing motions, (ECF Nos. 292, 297), and both parties then filed replies, (ECF Nos. 300, 303). As such, these matters have been fully briefed and are ripe for disposition.

## DISCUSSION

This litigation has been protracted, as has this Court's consideration of the pending summary judgment motions. An examination of the docket shows that nearly seven (7) years elapsed between the initiation of the action by the Plaintiff and the filing of the pending Motions. In addition to the four iterations of the Complaint, there had been extensive and extended sparring at the outset and then during the duration of this litigation as to exactly on whose behalf the Plaintiff was seeking some form of remedial relief (the recurring "Schedule A" disputes that spanned three

plus years of this litigation), along with the entry of seven (7) case management Orders or their equivalent all at the behest of the parties, extending fact discovery to cover nearly four (4) years.

There have been detours into the world of bankruptcy, litigated issues involving the assertion of privileges by the Plaintiff, an unsuccessful judicial settlement conference (which spawned its own flurry of discovery and litigation machinations and disputes), disputed motions to dismiss and to intervene, contested motions to compel witness statements and for reference to the Bankruptcy Court, and assorted and sundry other litigation disputes of lower temperature. From the first to the fourth (and now operative) version of the Complaint, the universe of individuals for whom the Plaintiff was claiming some flavor of legal and equitable relief grew from 89 to more than 700. By any measure, there has been significant action with many moving parts and evolving theories of the claims and defenses asserted, as the 300-plus docket entries in this case demonstrate.

All of that activity has generated a copious record for the parties to reference as buttressing their summary judgment positions, and all of which the Court has combed through in regard to the pending Motions. (*See* ECF No. 284, Ex. A-N-3; ECF No. 285, Ex. O-AA8; ECF No. 291, Ex. 1-2; ECF No. 293, Ex. 1-3). That review, for the reasons noted below, demonstrates to the Court that each party, in advancing its own Motion for Summary Judgment, has at critical times overstated the impact of various factual nuggets that they believe cut in their favor and bypassed those that cut against them, each arguing that the record is so one-sided that they are to prevail across the board and as a matter of law. The Court concludes otherwise.

## I.      Standard of Review

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "There is a

genuine dispute of material fact if the evidence is sufficient for a reasonable fact finder to return a verdict for the nonmoving party." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (citing *Anderson*, 477 U.S. at 248). However, a mere "scintilla of evidence" in the nonmovant's favor does not create a genuine issue of fact, nor does speculation or conjecture defeat a motion for summary judgment. *Ramara*, 814 F.3d at 666 (citing *Anderson*, 477 U.S. at 252; *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009)). Where cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).

The Court's job, then, is to determine whether there exists a genuine issue of material fact as to any of the arguments made in favor of summary judgment for either party. The Court's assessment is that there exist genuine issues of material fact precluding the grant of summary judgment for either party, save as to the issue of the number of Landmen that fall under the umbrella of this litigation.

## II. There is no genuine dispute as to the number of individuals that constitute Landmen for the purposes of this litigation.

Under Fed. R. Civ. P. 56(a), a court may grant summary judgment on a particular issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). "[A] nonmoving party must adduce

more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Furthermore, "if a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment." *Homeland Ins. Co. of Del. V. Devereux Foundation*, 505 F. Supp. 3d 508, 514-15 (E.D. Pa. 2020) (citing Fed. R. Civ. P. 56(3)(2)-(3).

As opposed to the other issues on which Plaintiff asks the Court to grant summary judgment, the issue of how many of the individuals that Holland classified as independent contractors fall within the rubric of "Landmen" is a question upon which Plaintiff presents significant record evidence, in the form of depositions, answers to interrogatories, Holland's own business records obtained during fact discovery, that all 766 individuals listed in Schedule A to the Third Amended Complaint are to be considered Landmen for the purposes of this litigation. *See* (ECF No. 286, at 14-16). The Plaintiff having met her burden to demonstrate that no dispute exists as to the role of these individuals within Holland's business, the burden shifts to Defendant to present specific facts, beyond the pleadings, showing that there is indeed a genuine issue of fact on that point.

Defendant fails to do so, either through its response to Plaintiff's Motion, its response to Plaintiff's submitted statement of facts, or in its own statement of material facts. In its response to Plaintiff's Motion, Defendant merely states that "Schedule A is a haphazard affair" without the dates or locations of the 766 individuals' employment with Holland, and that at least 38 of the listed individuals did not work in the Southpointe, Pennsylvania regional office.[1] (ECF No. 292, at 6). But Defendant's bald assertion that Schedule A is a "haphazard affair" is unsupported by the

---

[1] According to the Plaintiff, Gaudin has withdrawn this allegation for 31 of these 38 individuals, now disputing only the workplaces of the seven (7) remaining workers. (ECF Nos. 296, 304).

voluminous record evidence that Plaintiff cites in her brief. And in its response to Plaintiff's statement of facts, Defendant deems admitted a number of facts that show groups of Holland workers, even if not labeled Landmen in Holland's business records, are to be fairly considered Landmen for the purposes of this litigation. (ECF No. 293, at ¶ 12-17, 21, 24-26).

Where the Defendant denies certain facts on this issue, he generally avers that those facts are simply denied as immaterial or unsupported without further explanation or factual support, and in direct contrast to the facts already deemed admitted. Finally, while Defendant's own statement of facts contains an affidavit signed by Gaudin discussing his role in hiring and firing certain Landmen and disputing the location of certain listed individuals' employment,[2] neither the statement of facts nor the affidavit presents record evidence controverting Plaintiff's assertions of fact nor presents evidence showing why those individuals listed by Plaintiff should not be considered Landmen, nor otherwise generates an issue of fact on those points.

Save for the now seven (7) workers that the Defendant argues never worked under the auspices of the Company's Southpointe, Pennsylvania office, such that this Court would lack jurisdiction over their claims, the Court concludes that the fact that the remaining 759 individuals were employed as Landmen by Holland is undisputed as the Defendant has failed to adequately and properly address Plaintiff's assertions of fact surrounding this issue. The Court thereby concludes that the Plaintiff is entitled to summary judgment on the single issue of whether the 759 individuals listed in Schedule A are Landmen, as there exists no genuine dispute of material fact as to this issue.

### III.   There is a genuine issue of material fact as to whether the Landmen were employees or independent contractors.

---

[2] Again, while originally 38, Defendant now only disputes the work location of seven (7) workers. *See* n.1.

In the Third Circuit, district courts are to employ a six-factor test to determine whether an individual is an "employee" or an "independent contractor" under the FLSA. *Martin v. Selker Bros. Inc.*, 949 F.2d 1286, 1292 (3d Cir. 1991). Those factors are:

1) The degree of the alleged employer's right to control the manner in which the work is to be performed;
2) The alleged employee's opportunity for profit or loss depending upon his managerial skill;
3) The alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
4) Whether the service rendered requires special skills;
5) The degree of permanence of the working relationship; and
6) Whether the service rendered is an integral part of the alleged employer's business.

*Id.* at 1293. No one factor is dispositive. *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 230 (3d Cir. 2019). Instead, "a court should consider them together in the circumstances of the whole activity to determine whether the worker is dependent upon the business to which she renders service or is, as a matter of economic reality, operating an independent business for herself." *Id.* (quoting *Selker Bros.*, 949 F.2d at 1293) (internal quotations omitted).

It strikes the Court that given this multi-factor test, coupled with the reality that the referenced factors are intensely fact-specific and are to be considered in conjunction with one another and in a holistic fashion, particularly in a cases such as this, involving more than 700 potential claimants, it would as a matter of logic and experience be the rarer case in which a court's analytical outcome were so one-sided that one party or the other would prevail as a matter of law on this issue without a trial. And this is not that rarer case.

Plaintiff argues that there is no genuine issue of material fact as to the question of the Landmens' classification because all six factors compel a finding that the Landmen were employees, such an application of those factors must lead only to that finding. (ECF No. 283, p. 3). Citing to what the Plaintiff deems "undisputed" facts, Plaintiff argues that the Company had a

heavy hand in controlling the work of Landmen, exercised strict control over their billing records

and pay, and provided them with job skills. (ECF No. 283, p. 4-9). According to Plaintiff, the

Company's exercise of control included requiring Landmen adhere to a dress code[3], providing

"professionalism" expectations while performing assigned projects, assigning Project Managers

to oversee their assignments, and providing rental computers when requested. (*Id.*). At the same

time, Plaintiff argues, Landmen provided an integral service to Holland's business, and many of

them provided those services for many projects, back-to-back, and over a long period of time. (*Id.*).

In furtherance of that argument, Plaintiff claims that the average Landman worked at Holland for

more than a year as project assignments were renewed or assigned—468 days, to be exact (ECF

No. 283, p. 20)—such that their working relationship with Holland was effectively permanent.

But the facts on this core issue *are* disputed. As but one example, in his response to

Plaintiff's Concise Statement of Material Facts, (ECF No. 293, responding to ECF No. 288),

Defendant denies that Landmen were required to follow a dress code as part of its "professionalism

requirement" (ECF No. 293, at 13) and argues, from the record, that the 468-day average working

time figure is unsupported by the record evidence, (ECF No. 293, at 28). Defendant further argues

in support of his argument that, according to the record, Landmen were required to provide all of

their own equipment, tools, office space, materials, and supplies to accomplish tasks and that

contracts were awarded on a project-by-project basis with no guarantee of future work. (ECF No.

---

[3] Given her repetitive references to it, the Plaintiff appears to the Court to be inordinately focused  on the topic of a "dress code"/professional appearance standard for the Landmen, one claimed to have been promulgated by Gaudin in his role as COO/CEO of the Company. While one factor to be considered in the multi-factor analysis set out above, a dress code or a requirement that Landmen wear specific types of clothing or behave professionally when working on the projects to which they have been assigned is by no means preclusive or dispositive on the classification issue, nor does it carry with it some sort of talismanic heft commensurate with the Plaintiff's enhanced attention to it. *Safarian v. American DG Energy Inc.,* No. 10-6082, 2015 WL 12698441, at *3 (D. N.J. Nov. 24, 2015) (engineer provided a uniform by the company was nonetheless correctly classified as an independent contractor); *see also Verma v. 3001 Castor, Inc*., 937 F. 3d 221, 230 (3d Cir. 2019) (application of a dress code as one factor in concluding that workers were employees); *Jimenez v. Best Behvioral Healthcare, Inc*., 391 F. Supp. 3d 380, 385 (E.D. Pa. 2019) (same).

293, at 25).

The differing pictures presented by Plaintiff and Defendant demonstrate the existence of a genuine dispute of material fact as to this issue. A prime example comes in the Plaintiff's characterization of the record as to the classification of the Landmen as independent contractors as opposed to employees. In her Reply Brief in support of her Motion for Summary Judgment, the Plaintiff states that Gaudin has admitted that the Landmen were misclassified as independent contractors. (ECF No. 300, at 1). But an examination of Defendant's Response to Plaintiff's Concise Statement of Material Facts shows that Defendant contests as unsupported by the cited record many of the factual averments advanced by the Plaintiff. (ECF No. 293, ¶ 1-180). In fact, of the 180 statements set out at ECF No. 293 of what the Plaintiff characterizes as undisputed statements of material fact, the reality is that the Defendant has contested 76 of them (many of which are quite "material"), each going to the dispute between the parties on the questions of classification and Gaudin's status (or not) as an "employer". The Court's own review of the record materials referenced in each of what are labeled as statements of undisputed material facts reveals that the nub of the dispute between the parties almost always boils down to certain inferences to be drawn from the record, despite counsels' surely certain knowledge that the drawing (or not) of a particular inference is the province of the fact finder and is not suited for the Court's resolution at the summary judgment stage.

While Plaintiff points to parts of the factual record to paint a picture of an organization heavily and persistently supervised from the top (specifically by Gaudin), with services provided by a highly integrated workforce made up of what should be fairly considered as long-term employees, Defendant puts forth a contrasting image of an amalgamation of temporary, project-by-project contractors, albeit with a number of them returning for duty on succeeding projects,

with basic standards for the delivery of services and interactions with the Company's customers and others, but without intimate control of the means and manner by which services are provided day in and day out. The disconnect between these two pictures, each premised on some hand-selected facts in the voluminous record and then the advocacy of the parties as to the inferences that should be drawn from them, plainly demonstrates to this Court the existence of genuine factual disputes as to the role of the Landmen within the Company such that summary judgment is not warranted with respect to the question of the alleged misclassification of the Landmen as independent contractors instead of as employees.

## IV.    There is a genuine issue of material fact as to whether Gaudin was an employer under the FLSA.

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The standard for determining whether an individual is an "employer" within the meaning of the FLSA was set in *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 683 F.3d 462 (3d Cir. 2012). In that case, the Third Circuit stated:

> When faced with a question requiring examination of a potential joint employment relationship under the FLSA, we conclude that courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Id.* at 469.[4] The court noted, however, that the list of factors was not exhaustive and should not be

---

[4] That test applies with equal force to entity employers and individual owners, officers, or supervisors. *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014) ("Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA."). In determining whether an officer or supervisor is a joint employer under the FLSA, courts are to focus on "the totality of the circumstances rather than on technical concepts of the employment relationship" in determining

"blindly applied." *Id.* Specifically, the Circuit stated that "[i]f a court concludes that other indicia of 'significant control' are present… that determination may be persuasive, when incorporated with the individual factors set forth." *Id.* at 170.

In making her case for summary judgment, Plaintiff cites to a number of Supreme Court cases setting out the expansive reach of the term "employer" under the FLSA. *See Nationwide Mut. Ins. Co. v. McComb*, 503 U.S. 318, 326 (1992); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945). While it is true that the FLSA defines the term broadly, that truism is not dispositive of the instant question; if it were, then every corporate executive would be subject to personal and individual FLSA liability by virtue of their formal placement in the corporate chain of command. The next step, then, is to determine whether Gaudin specifically exercised such significant control over the Landmen such that he, as an individual corporate executive, is considered to be an FLSA employer as a matter of law.[5]

Plaintiff argues that there is no question that Gaudin qualifies as an employer under the FLSA due to his "unfettered authority" to hire and fire Landmen, his direct oversight of the Landmen, his personal determination of the method and rate of payment for Landmen, and his own

---

whether the individual exercises "supervisory authority over the complaining employee" and whether she "was responsible in whole or in part for the allege violation while acting in the employer's interest." *Id.* at 153-54 (quoting *Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408, 417-18 (3d Cir. 2012). And in conducting that review of the economic reality of the situation, courts are to look to the *Enterprise* factors for guidance. *Id.* at 148.

[5] Both Plaintiff and Defendant cite to the incorrect test in addressing this question. In its brief, Plaintiff cites to a test set forth in *Haybarger v. Lawrence County Adult Probation and Parole*, 667 F.3d 408 (3d Cir. 2012), a case interpreting the FMLA, in arguing for Gaudin's liability under the FLSA. Defendant similarly cites to the *Haybarger* test in arguing that Gaudin was not an employer. While the *Haybarger* and *Enterprise* tests are similar, they are not exactly the same: *Haybarger* factors (1), (2), and (4) resemble those in *Enterprise*, *Haybarger* factor (3) is subsumed within *Enterprise* factor (2), and *Enterprise* adds an additional factor in factor (3) discussing an employer's involvement in day-to-day employee supervision. Because the *Enterprise* test is the applicable test in FLSA cases under Third Circuit law, that is the test that the Court applies here. That being said, as noted in n.4, *Haybarger* remains relevant in that it reinforces that the test for determining whether an individual or entity is an employer is an economic reality test, not a bright line rule based on a single factor, and that the overarching question is whether the individual or entity exercised supervisory authority over the claimed employees.

decision to classify the Landmen as independent contractors, not employees. (ECF No. 283, p. 18-19). In response, Defendant argues that Gaudin was in reality quite limited in his involvement in the day-to-day hiring, firing and supervision of Landmen, and disputes his level of involvement in the classification determination and pay rate determinations. (ECF No. 292, p. 4-5).

Here, there is a plain issue of material fact as to Gaudin's level of involvement as a supervisor over the Landmen. That Gaudin as the most senior executive of the Company had the authority to hire and fire Landmen, to promulgate work rules and assignments, and to set their conditions of employment is supported by the record, which for these purposes the Court will treat as meeting the first and second factors of the *Enterprise* test at this stage of the case. However, the third and fourth factors—whether Gaudin was involved in the day-to-day supervision of Landmen and his actual control of employee work and records—are heavily disputed. In fact, the Court's careful review of the actual underlying matters in the record, beyond the facts to which both parties cite in their briefs and statements of what are proffered to be of "undisputed fact" (ECF Nos. 288, 291)[6]—which themselves contain plenty of record-based disputes as to material fact—reveals that a number of material factual matters are in dispute.

With respect to the fourth *Enterprise* factor, it appears to the Court that the Plaintiff argues, from the fact that Gaudin admitted his engagement in the certain "control" activities on an episodic basis as to some number of situations, that the record inexorably leads to the conclusion that those facts translate into his having "employer" status as a matter of law as to all 700-plus Landmen, every time, as to every person for whom relief is claimed, over the entire remedial period advanced

---

[6] These filings are styled as "Concise Statements of Material Facts," but in a number of ways, each party's filing is neither concise nor contains only undisputed fact, and both contain a significant amount of legal argument dressed up as statements of fact as opposed to the simple and direct listing of record facts. And as noted above, in advancing and contesting what is in the record, the papers of the parties carry with them a heavy gloss of inference generation. So, the Court has had to burn through that "fog of advocacy" in considering the matters now before it not only via the parties' briefs, but also via their proffered "statements of fact".

by the Plaintiff. (ECF No. 286, at 11-13). And the Court reaches that observation without needing to give credit to Gaudin's post-deposition declaration, the submission of which the Plaintiff spends considerable time protesting.

By way of example only, the deposition testimony of Gaudin and others shows that Gaudin discussed Landmen compensation rates with subordinates (ECF No. 284, Ex. A, at 61, ¶ 2); at times set the "day rates" for Landmen (*id.* at Ex. E, at 31, ¶ 19 and 208, ¶ 8); at times set overall staffing levels (*id.* at Ex. A, at 65, ¶ 25); approved the recommendations of others for the hiring of some Landmen and set the baseline criteria for some successful candidates (*id.* at Ex. A, at 49, ¶ 24 and 50, ¶ 14; Ex. E, at 206, ¶ 23 and 207, ¶ 15); had to sign off on at least some performance-based terminations and considered which Landmen to engage on new projects (*id.* at Ex. A, at 57, ¶ 5-20, 58, ¶¶ 16, 60, ¶ 5, and 64, ¶ 7-20); evaluated task performance of Landmen (*id.* at Ex. E, at 207, ¶ 15); and would intervene in certain situations in which a Landman's conduct was called into question (*id.* at Ex. B, at 102, ¶ 8).

On the other hand, the testimonial record also shows that senior managers below Gaudin, along with others, could and did hire Landmen (*id.* at Ex. A, at 47, ¶ 25); others hired the initial cadre of Landmen at Washington, PA (*id.* at Ex. B, at 64, ¶ 1 and 66, ¶ 3); once an HR Department was up and running in Texas, that department handled retaining Landmen (*id.* at Ex. K, at 37, ¶ 19, 38, ¶ 21, and 39, ¶ 5); Gaudin set general parameters for Landmen qualifications but sent referrals of applicants to others for retention decisions (*id.* at Ex. B, at 231, ¶ 12; Ex. J, at 82, ¶ 24); Gaudin did not implement work rules or protocols for interaction with local court offices, but other managers did (*id.* at Ex. B, at 101, ¶ 20); and the HR Department reviewed timesheets and approved payouts, and Gaudin did not interact with the HR Department on approval of extra hours/pay for a project (*id.* at Ex. B, at 204, ¶ 15; Ex. K, at 134, ¶ 4).

And as to how expenses of the work were handled, the record is equally mixed—the Company would book and pay for travel and reimburse Landmen for mileage and out of pocket court recording fees (*id.* at Ex. A, at 95, ¶ 2 and 122, ¶ 5), but the Landmen were responsible for all tools and supplies they needed to do their work, and if they needed to use a computer or an office in which to work, they could use their own, or rent one from the Company. (*Id.* at Ex. E, at 35, ¶ 17-36, ¶ 8).

While much of the testimony cited by the Plaintiff and the Defendant (only a selection of which appears above) may end up being admissible on the issue of the nature and scope and duration of Gaudin's involvement and authority as to such matters, at this procedural juncture, the Defendant is entitled as the non-moving party to all reasonable inferences in his favor as to the Plaintiff's Motion, and from the Court's perspective each of those critical contextual elements remains in dispute.

Not surprisingly given the prolix arc of this litigation, in his own Motion for Summary Judgment, Gaudin claims that there are sufficient facts at this stage of the litigation to prove conclusively that he played only a garden-variety supervisory role over Landmen as Holland's CEO and thus, as a matter of law, cannot be considered an employer under the FLSA. (ECF No. 290, p. 8). In support of this proposition, Defendant cites to a non-precedential case interpreting the FMLA in which the Eastern District of Pennsylvania held that two co-owners and CEOs of a company "did not exercise the kind of control over [the plaintiff's] employment required for individual liability" because they were "at the top of the [] food chain" and "had no direct interaction with [the plaintiff] or his employment." *Abdelmassih v. Mitra QSR KNE LLC*, No. 16-4941, 2018 WL 1083857, at *10 (E.D. Pa. Feb. 28, 2018). Defendant additionally cites to a different non-precedential case for the proposition that Gaudin's lack of ownership interest in

Holland compels this Court to find that he was not an employer. *Wright v. Lehigh Valley Hosp. & Health Network*, No. 10-431, 2011 WL 2550361, at *2 (E.D. Pa. June 23, 2011).[7]

In response to Gaudin's arguments, Plaintiff cites to *Falk v. Brennan*, 414 U.S. 190 (1973) for the proposition that employees can have multiple employers, and that the contention that Gaudin did not exercise *total* control over the terms and conditions of the Landmen's work does not free him from joint and several liability with any other employer, including the Company. *Id.* at 195. Further, in response to the cases Defendant cites, Plaintiff notes that none of the caselaw Gaudin cites is precedential and directs the Court's attention back to the relevant and overarching Third Circuit test.

Plaintiff is correct in that the caselaw Defendant cites, while germane and of note, is non-precedential, and in the Court's judgment presents insufficient grounds upon which to grant summary judgment in Defendant's favor. And while Gaudin's lack of ownership interest and his claim that he played only a supervisory role over the Project Managers that oversaw the Landmen's work are facts to be considered in evaluating Gaudin's role, just like the competing facts presented by Plaintiff, these are simply some of the many record facts to be considered in determining whether Gaudin exercised significant control over the Landmen under the multi-factor, fact-intensive *Enterprise* test. And importantly, Plaintiff cannot carry the day solely on the fact that Gaudin had the authority or the capacity to become more personally involved in the day-to-day management and control of the Landmen; if that were the determinative issue, then the relevant legal test would have but a single factor rather than four, and every corporate CEO would be

---

[7] Notably, that case's statement that a corporate officer's ownership interest in the corporation is "relevant to the personal liability analysis" comes from two non-controlling First Circuit cases. *See Chao v. Hotel Oasis*, 493 F.3d 26, 34 (1st Cir. 2007); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 677 (1st Cir. 1998). And, as a reminder, at the summary judgment stage, an analytical factor, or an evidentiary snippet, does not carry the day, unless it is so compelling that it leads to but one outcome on the matter at dispute.

deemed an "employer" by virtue of the authority of their office, but that is not the law. Instead, the law is a fact-specific "economic reality" test that requires courts to focus on "the totality of the circumstances rather than on technical concepts of the employment relationship." *Haybarger*, 667 F.3d at 418.

Here, the depositions contain plenty of testimony cutting each way on the question of Gaudin's actual exercise of authority relative to the Landmen. Because the question of whether Gaudin was a "mere supervisor" simply residing at the top of a corporate hierarchy or was instead a full-blown hands-on "employer" of the Landmen is an issue lying at the crux of this case, and each party focuses on vastly different and competing facts culled from the record (and their preferred inferences from them), the question of Gaudin's status (or not) as an FLSA employer is an appropriate question for the trier of fact, not for summary judgment.

Because the facts as presented by each party are both record-based and, in the isolation with which they are advanced, are at points directly contradictory as to the nature and the depth of Gaudin's level of involvement with the Landmen, and therefore do not conclusively resolve Gaudin's status as an employer under the FLSA as a matter of law, the Court cannot grant summary judgment to either party with respect to this issue.[8]

**V.      There is a genuine issue of material fact as to whether Gaudin's alleged violations of the FLSA were willful, such that the three-year statute of limitations for willful violations, as opposed to the standard two-year statute of limitations, applies.**

---

[8] The Court's conclusion as to this issue also counsels against the entry of summary judgment as to the issue of whether Defendant violated the recordkeeping provisions of the FLSA. *See* (ECF No. 286, at 13-14). Because there is a genuine dispute of material fact as to whether Gaudin is an employer under the FLSA, and thus whether he is personally liable for any recordkeeping violations committed by Holland in relation to the Landmen, the Court cannot grant summary judgment as to this issue. The Court makes no finding with respect to the merits of Plaintiff's argument as to Holland's alleged recordkeeping violations, concluding only that granting summary judgment is inappropriate at this stage as it has yet to be proven that Gaudin was an employer under the FLSA and is thus personally liable for any such violations.

The FLSA provides for a general statute of limitations of two years from the date the action is commenced[9] [10] for minimum wage and overtime violations; however, if an employer acts willfully in violating the FLSA, the statute of limitations is extended to three years. 29 U.S.C. § 255(a) (requiring that "any cause of action be commenced within two years after the cause of action accrued… except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."). Which statute of limitations applies is relevant here for damages purposes: under the statute of limitations for willful violations,

---

[9] Under the FLSA, claims for unpaid overtime wages accrue at the end of each pay period during which overtime is not paid. *Stone v. Troy Construction, LLC,* 935 F.3d 141, 154 (3d Cir. 2019). Here, the DOL filed the initial complaint on August 30, 2015 and alleged FLSA violations occurring "since at least May 2013" and "from at least May 2013 through at least March 2014." (ECF No. 1, p. 3-4).

[10] A wrinkle in this case is that the operative complaint, the Third Amended Complaint, was filed on May 18, 2018, over four years after the last pay period during which overtime was allegedly not paid and well over two years after the initial complaint was filed. (ECF No. 166). The relevant question is whether the additional claims asserted in the Amended Schedule A (adding a considerable number of new employees to bring the total to 766 individuals and adding the willfulness claim) in the operative Complaint relate back to the initial Complaint, because if those claims did not relate back, they would be completely barred by the statute of limitations.

Under Fed. R. Civ. P. 15(c), a party may add certain new claims or parties in an amended complaint that "relates back" to the date of filing of the original complaint for statute of limitations purposes under certain conditions. *Mullin v. Balicki*, 875 F.3d 140, 158 (3d Cir. 2017). If the change meets the requirements of Rule 15(c), the amended complaint is treated, for statute of limitation purposes, as if it had been filed at the time of the original complaint." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 189 (3d Cir. 2001). One of the conditions under which an amended pleading relates back is where "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). In this circumstance, "relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005).

Both changes to the initial Complaint—the addition of new claims of willfulness and of the 677 additional Landmen alleged to have been underpaid—appear to fall within the purview of Rule 15(c)(2). While the First Amended Complaint added new claims related to willfulness, the added claims clearly stemmed from the same common core of facts related to Holland and Gaudin's alleged misclassification of Landmen. And while the Third Amended Complaint added an additional 677 workers to the list of those allegedly denied overtime wages, the new claims—albeit more voluminous—were identical to the 89 claims originally asserted in the initial complaint. As such, it seems to be the case that Rule 15(c)(2) would likely apply here, such that the Third Amended Complaint would relate back, for statute of limitation purposes, to August 20, 2015.

Plaintiffs, if successful in proving their claims, would be entitled to three additional months of injunctive relief, unpaid overtime wages,[11] and potentially liquidated damages.[12]

In the Third Circuit, "[w]illfulness under the FLSA is established where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited.'" *Stone v. Troy Constr., LLC*, 935 F.3d 141, 150 (3d Cir. 2019) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "Willfulness is a factual question that should go before a jury unless no reasonable factfinder could find for the employee." *Garcia v. Vertical Screen, Inc.*, 580 Supp. 3d 79, 91 (E.D. Pa. 2022); *see also Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 208 (3d Cir. 2005). At the same time, establishing a willful violation does not require a showing that the employer's conduct was outrageous or egregious. *Stone*, 935 F.3d at 149.

Plaintiff argues that no genuine dispute of material fact exists with respect to whether Gaudin acted, at minimum, with reckless disregard for the law in misclassifying the Landmen.

---

[11] The initial Complaint, filed on August 30, 2015, covers all pay periods from August 2013 to March 2014, or eight months, under the two-year statute of limitations or, in the alternative, all pay periods from May 2013 onwards under the three-year statute of limitations. The difference between these two figures is three months; thus, if the violations were found to be willful, Plaintiffs would be entitled to three more months of unpaid overtime wages than if the violations were not found to be willful.

[12] Note that the calculation for potential damages differs for the different claims asserted by the Plaintiff. Plaintiff asserts claims under FLSA § 16(c) for unpaid overtime compensation and liquidated damages, the latter of which are only applicable to willful violations, as well as under § 17 for injunctive relief. "An action commenced under Section 17 is commenced for all purposes when the complaint is filed and the individual employees for whom relief is sought need not be named in the complaint." *EEOC v. Westinghouse Elec. Corp.*, 725 F.2d 221, 221 (3d Cir. 1983). As such, all of the § 17 claims asserted here commenced upon the filing of the initial complaint on August 20, 2015, such that Plaintiff's claims for injunctive relief would include 1) all pay periods from August 20, 2013 onward under the two-year statute of limitations or 2) all pay periods from May 2013 onward under the three-year statute of limitations.

By contrast, "Section 16(c) requires the identification of an individual claimant in the complaint to stop the running of the statute of limitations period." *Id.* As a result, § 16(c) while the claims as to the 89 individuals named in the first complaint commenced on August 20, 2015, the claims as to the 677 individuals added in the Third Amended Complaint commenced on July 7, 2017. So, while the § 16(c) claims for back wages and liquidated damages for the 89 individuals named in the initial complaint commenced on August 20, 2015 and cover all pay periods from August 20, 2013 onward under the two-year statute or May 2013 onward under the three-year statute, the § 16(c) claims for the 677 individuals newly identified in the Third Amended complaint commenced on July 7, 2017 such that Plaintiff's claims on behalf of those individuals only cover any pay periods where overtime was withheld from July 7, 2015 onward under the two-year statute or any periods from July 7, 2014 under the three-year statute.

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (holding the willfulness can be established by a showing of knowledge or reckless disregard for legality). Because Gaudin admits to having discussed the classification decision with Holland's counsel and was therefore aware of the FLSA's relevant legal requirements relative to the employee/contractor classification question due to the legal advice he received, Plaintiff argues that the decision to nevertheless classify the Landmen as independent contractors was necessarily willfully unlawful. (ECF No. 283-2, p. 27). *See Selker Bros.*, 949 F.2d at 1296 (holding that willfulness may be found where an employer knew his or her conduct might be illegal but failed to make a good faith effort to investigate its legality); *see also Garcia v. Tenafly Gourmet Farms, Inc.*, No. 11-6828. 2012 WL 715316, at *2 (D.N.J. Mar. 5, 2012) (holding that an employer's awareness of possible FLSA violations combined with an "indifference toward the requirements imposed" by the statute supports a finding of willfulness). In response, Defendant argues that Gaudin's efforts in meeting with counsel to discuss the issue of worker classification instead conclusively demonstrates his good-faith efforts to comply with the law. (ECF No. 290, p. 11).

In his own Motion for Summary Judgment, Defendant argues that he acted reasonably in believing the Landmen were properly classified as independent contractors such that his actions cannot be said to have been willful. *See Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 273 (3d Cir. 2010) ("[A]n employer has not willfully violated the FLSA if it acts reasonably in determining its legal obligation."). Gaudin says that because he affirmatively and (reasonably) subjectively believed that Holland's classification of the Landmen as contractors was lawful based on his discussions with the Company's legal counsel, his actions were *per se* reasonable. In response, Plaintiff argues that, under *Selker Bros.*, an FLSA violation that

nevertheless may be reasonable is considered willful where an employer knew its conduct *might* be illegal but failed to make a good faith effort to investigate its legality. 949 F.2d at 1296.

Once more, the significant difference between the two landscapes presented by Plaintiff and Defendant demonstrates that there is a genuine dispute of material fact on this point. While it is undisputed that Gaudin spoke to Holland's counsel on a number of occasions about the Company's classifications of the Landmen and thereby was advised about the relevant test for the distinctions between an independent contractor and an employee, the parties vehemently disagree about what these conversations mean with respect to willfulness.

To Plaintiff, the conversations show Gaudin's awareness of the FLSA's legal requirements and, as a result, his deliberate indifference to, or intentional violations of, the law. The Court rejects that argument, at least in the context of this case. The Plaintiff's argument, taken to its natural and logical conclusion, is that if an employer does not seek legal advice on the question of classification, then the employer is definitionally reckless because he did not care enough about the issue to even seek counsel. In the same breath, Plaintiff argues that when an employer *does* seek legal counsel on the topic, he immediately becomes necessarily reckless because his ensuing awareness that a legal and factual issue might exist with respect to an employee's classification, and his discussion with lawyers about the potential issue, demonstrates his willful (or reckless) decision to subsequently misclassify an employee. This classic "heads I win, tails you lose" argument is inconsistent with controlling law. And here, it presumes a conclusion not yet reached, namely that Gaudin was both an FLSA employer, and that the Landmen were actually misclassified as independent contractors. As discussed above, the facts of this case, at least at this procedural stage, do not conclusively show either.

By contrast, to Defendant, the discussions Gaudin had with legal counsel conclusively demonstrate his good faith effort to comply with the law and the reasonableness of his actions in believing, at the time, that the involved individuals were properly classified as independent contractors as a matter of law. But that argument is similarly unconvincing, at least at the summary judgment stage, since its logical extension is that anytime an employer seeks legal advice on the classification question, the very fact that she did so insulates her from FLSA liability as a matter of law. That argument, too, is overreaching, as well as contrary to the prevailing legal tests.

Whether Gaudin acted willfully—or at least with reckless disregard of the law—in allegedly misclassifying the Landmen as independent contractors or, instead, acted in good faith in making the classification determination on the (allegedly incorrect or at least inapplicable) advice of counsel is a question suited for the trier of fact, should it be proven that Gaudin was an FLSA employer and that the Landmen were misclassified, and is not a matter for conclusive resolution on summary judgment.

## CONCLUSION

For the reasons set out above, Plaintiff's Motion for Summary Judgment (ECF No. 283) is DENIED save for the issue of the number of Landmen to be included in this litigation, upon which discrete issue the Court grants summary judgment as to the denomination of the 759 individuals listed at Schedule A. Defendant's Motion for Summary Judgment (ECF No. 289) is DENIED. Each denial of summary judgment is without prejudice to the position of any party at trial.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: April 23, 2024